[No. B217818. Second Dist., Div. Four. Aug. 26, 2010.]

MITCH TANEN, Plaintiff and Appellant, v.
SOUTHWEST AIRLINES CO., Defendant and Respondent.

**COUNSEL**

Gutride Safier, Adam J. Gutride, Seth A. Safier and L. Jay Kuo for Plaintiff and Appellant.

Morrison & Foerster, Jane H. Barrett, Ruth N. Borenstein and Teri M. Stein for Defendant and Respondent.

**OPINION**

**SUZUKAWA, J.**—Plaintiff and appellant Mitch Tanen (Tanen) bought a $100 travel certificate from defendant and respondent Southwest Airlines Co. (Southwest) in February 2005. He attempted to redeem it 14 months later, after its stated expiration date. When Southwest refused to honor the travel certificate, Tanen sued, asserting that the expiration date violated Civil Code section 1749.5, which makes it unlawful to sell a gift certificate that contains an expiration date. Southwest demurred, contending that Tanen's claims were

preempted by the federal Airline Deregulation Act of 1978 (ADA). (49 U.S.C. § 41713.) The trial court agreed and sustained the demurrer.

We affirm. For a claim to be preempted by the ADA, two things must be true: (1) the claim must relate to airline rates, routes or services; and (2) the claim must derive from the enactment or enforcement of state law. Here, both prongs of this test are met. First, Tanen's claims relate to "services" because they concern Southwest's sale of gift certificates that can be used to purchase airline travel. Second, his claims derive from state law because it is on a California statute, Civil Code section 1749.5, that Tanen bases his claim that the expiration date on the face of the gift certificate is unenforceable. We thus agree with the trial court that Tanen's claims are preempted by the ADA.

## FACTUAL AND PROCEDURAL HISTORY

Tanen filed the present action against Southwest on May 17, 2006. He filed a first amended class action complaint (complaint) on June 1, 2006. The complaint alleged that Southwest sells travel certificates, which are redeemable for airline tickets; drink certificates, which are redeemable for alcoholic beverages on Southwest flights; and vacation certificates, which are redeemable for Southwest vacation packages. Tanen purchased a $100 travel certificate on February 5, 2005, by submitting a completed "SWA Gift Certificate order form" (order form) and credit card information. The order form stated, in relevant part, that " '[a]ll gift certificates expire one year from the date of issue and will not be extended unless prohibited by law.' " Tanen subsequently received a $100 travel certificate, which stated that it expired on "02-07-06." It also stated that " '[t]he certificate must be redeemed and **travel must be completed by the expiration date shown on the face of the Gift Certificate'** " and the " '[v]alidity period will not be extended.' "

The complaint alleged that under Civil Code section 1749.5, " 'it is unlawful for any person or entity to sell a gift certificate to a purchaser containing an expiration date. Any gift certificate sold after [January 1, 1997] shall be redeemable in cash for its cash value, or subject to replacement with a new gift certificate at no cost to the purchaser or holder.' " Accordingly, the complaint asserted that the expiration of the Southwest travel, drink, and vacation certificates gave rise to the following causes of action: (1) violation of Civil Code section 1749.5; (2) violation of Business and Professions Code section 17200 (prohibiting unfair, unlawful, and deceptive trade practices); (3) violation of Civil Code section 1750 et seq. (Consumers Legal Remedies Act); (4) breach of written contract; (5) conversion; (6) fraud, deceit, and/or misrepresentation; and (7) declaratory relief. It sought compensatory damages, restitution, disgorgement, injunctive relief, punitive damages, and attorney fees.

Southwest demurred. It contended that all of Tanen's claims were preempted by the ADA, which preempts any state " 'law, regulation, or other provision having the force and effect of law related to a price, route or service of an air carrier.' " Further, it asserted that many of Tanen's causes of action were not properly pled, Civil Code section 1749.5 does not provide for a private right of action, and the vacation and drink certificate claims were not properly before the court.

Concurrently with its demurrer, Southwest filed a motion to strike all references to and all causes of action relating to vacation and drink certificates. Southwest asserted that Tanen could not challenge the expiration of vacation certificates because they do not expire. Further, he could not adequately plead causes of action as to vacation or drink certificates because he did not purchase either. Finally, because he never purchased vacation or drink certificates, Tanen did not have standing to raise claims relating to their issuance, nor did he have claims typical of the putative class.

The trial court sustained the demurrer with leave to amend on March 6, 2007. Its order stated as follows:

"The federal Airline Deregulation Act ('ADA') . . . explicitly preempted any state 'law, regulation, or other provision having the force and effect of law related to a price, route or service of an air carrier.' 49 U.S.C. App. § 4173(b)(1). Congress intended 'that carriers should not be burdened with conflicting state laws and policies that would have adverse economic consequences on the goal of increasing competition among carriers.' Power Stds. Lab., Inc. v. Fed. Ex. Corp., 127 Cal.App.4th 1039, 1043 [26 Cal.Rptr.3d 202] (2005).

"In its application of the ADA, the Supreme Court has twice emphasized the broad scope of the preemption provision. The Morales court held that state enforcement actions 'having a connection with, or reference to, airline "rates, routes, or services" are preempted' by the ADA. Morales v. Trans World Airlines Inc., 504 U.S. 374, 384 [119 L.Ed.2d 157, 112 S.Ct. 2031] [(1992)].

"In American Airlines, Inc. v. Wolens, 513 U.S. 219 [130 L.Ed.2d 715, 115 S.Ct. 817] (1995), the Supreme Court addressed ADA preemption regarding an airline's frequent flyer program. The Court held that plaintiffs' claims were clearly related to airline rates and services, and thus, the claims were preempted. Id. at 223–4, 226–28, 234. The Wolens court affirmed Morales' broad reading of the preemption doctrine, carving out a narrow exception for state-law breach of contract claims that involve a plaintiff seeking to enforce the actual terms of his contract with the airline.

"After these two cases, when 'determining whether a claim is preempted by the [ADA], courts employ a two-prong analysis: (1) whether the subject of the claim has a connection with or reference to airline rates, routes, or services, and if so, (2) whether the subject of the claim involves the enforcement by the state of a law, regulation, or other provision having the force and effect of law. If both questions are answered in the affirmative, then the [ADA] preempts the claim.' Osband v. United Airlines, Inc., 981 P.2d 616, 619 (Colo. Ct. App. 1998).

"Plaintiff's claim that gift certificates relating to the purchase of flights have only a peripheral effect on price is problematic. While the Vacation and Drink Certificates may not directly relate to airline 'rates, routes, or services,' it seems that the Travel Certificates do. Like Wolens, which dealt with frequent flyer credit cards, travel certificates that are used like cash to purchase flights are related to an airline's rates and services. The Travel Certificates in question are at the heart of what the ADA sought to preempt.

"Plaintiff's breach of contract claim alleges that the Travel Certificate states that '[a]ll gift certificates expire one year from the date of issue and will not be extended unless prohibited by law.' Plaintiff notes that California Civil Code § 1749.5 prohibits gift certificates with expiration dates. On April 4, 2006, Plaintiff provided notice to Defendant that Defendant honor the Travel Certificate despite the passage of one year from the time of purchase. Defendant failed to do so and Plaintiff alleges breach of contract.

"Under preemption, Defendant argues that no such legal prohibition existed because state law is inapplicable. As Defendant notes, Plaintiff's challenge to the contract is not based on Southwest's failure to abide by the terms of the contract, but rather, an attempt to use state law to invalidate the contract.

"The thrust of Plaintiff's contract argument is that laws of various states were incorporated into the Travel Certificate by virtue of the language of 'unless prohibited by law.' Because Plaintiff's breach of contract claim rests on the idea that expiration of the Travel Certificate violates state laws, it is inconsistent with the ADA and Congress' intent to remove airlines from the conflicting demands of state regulation. Wolens, 513 U.S. at 222, 228, 230. Accordingly, all claims concerning Travel Certificates, including a breach of contract claim, are preempted as a matter of law and leave to amend to attempt to state any claim regarding Travel Certificates would be futile.

"Next, because Plaintiff has not alleged that he purchased Drink or Vacation Certificates, he has suffered no damages from their issuance and thus lacks standing to bring his claims. Additionally, Plaintiff's lack of standing forecloses his [unfair competition law] claim in light of Proposition

64. Because Plaintiff lacks standing to assert the claims in the First Amended Complaint that arise from Drink and Vacation Certificates, the Court makes no ruling at this time as to application of ADA preemption to claims arising from those Certificates or as to any other challenges to Plaintiff's claims regarding those Certificates apart from standing."

The court sustained the demurrer with 20 days' leave to amend, with amendment limited solely to an attempt to state causes of action pertaining to drink and vacation certificates.

Tanen did not file an amended complaint, and on May 19, 2009, the trial court dismissed the action. Tanen timely appealed.

## STANDARD OF REVIEW

We independently review the ruling on a demurrer and determine de novo whether the pleading alleges facts sufficient to state a cause of action. We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice has been taken. We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons. (*Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 847–848 [99 Cal.Rptr.3d 503].)

## DISCUSSION

I. *The Preemption Provision of the Airline Deregulation Act*

### A.

In 1978, Congress enacted the ADA, which largely deregulated domestic air transport. "To ensure that the States would not undo federal deregulation with regulation of their own" (*Morales v. Trans World Airlines, Inc., supra*, 504 U.S. 374, 378 (*Morales*)), the ADA included an express preemption clause that read in relevant part: " '[N]o State . . . shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier . . . .' " (*American Airlines, Inc. v. Wolens, supra*, 513 U.S. 219, 222–223 (*Wolens*), quoting 49 U.S.C. Appen. § 1305(a)(1).)

Congress reenacted title 49 of the United States Code in 1994. When it did so, it revised the ADA's preemption clause to read: "[A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ."

(49 U.S.C. § 41713(b)(1).) Congress intended the revision to make no substantive change. (*Wolens, supra*, 513 U.S. at p. 223, fn. 1.)

The United States Supreme Court has twice addressed the scope of the ADA's preemption clause. In *Morales, supra*, 504 U.S. 374, the court considered whether the ADA preempted "Air Travel Industry Enforcement Guidelines" (guidelines) adopted by state attorneys general that "contain[ed] detailed standards governing the content and format of airline advertising, the awarding of premiums to regular customers (so-called 'frequent flyers'), and the payment of compensation to passengers who voluntarily yield their seats on overbooked flights." (504 U.S. at p. 379.) These guidelines purported not to " 'create any new laws or regulations,' " but instead claimed to " 'explain in detail how existing state laws apply to air fare advertising and frequent flyer programs.' " (*Ibid.*)

■ The court concluded that the guidelines were preempted by the ADA. It explained that the ordinary meaning of "relating to" is a broad one—" 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with,' Black's Law Dictionary 1158 (5th ed. 1979)—and the words thus express a broad pre-emptive purpose." (*Morales, supra*, 504 U.S. at p. 383.) Accordingly, "[s]tate enforcement actions having *a connection with, or reference to*, airline 'rates, routes, or services' are pre-empted under 49 U. S. C. App. § 1305(a)(1)." (*Morales, supra*, at p. 384.)

Applying this standard, the court concluded that the guidelines "quite obviously" related to fares. (*Morales, supra*, 504 U.S. at p. 387.) It explained: "Section 2.1, governing print advertisements of fares, requires 'clear and conspicuous disclosure [defined as the lesser of one-third the size of the largest typeface in the ad or 10-point type] of restrictions . . .' . . . . Section 2.2 imposes similar, though somewhat less onerous, restrictions on broadcast advertisements of fares; and § 2.3 requires billboard fare ads to state clearly and conspicuously ' "Substantial restrictions apply" ' if there are any material restrictions on the fares' availability. . . . Section 2.5 requires that the advertised fare include all taxes and surcharges; round-trip fares, under § 2.6, must be disclosed at least as prominently as the one-way fare when the fare is only available on round trips; and § 2.7 prohibits use of the words ' "sale," "discount," [or] "reduced" ' unless the advertised fare is available only for a limited time and is 'substantially below the usual price for the same fare with the same restrictions.' " (*Id.* at pp. 387–388.) The court held that "[o]ne cannot avoid the conclusion that these aspects of the guidelines 'relate to' airline rates. In its terms, every one of the guidelines enumerated above bears a 'reference to' airfares. [Citation.] And, collectively, the guidelines establish binding requirements as to how tickets may be marketed if they are to be sold

at given prices." (*Id.* at p. 388.) Moreover, "beyond the guidelines' express reference to fares, it is clear as an economic matter that state restrictions on fare advertising have the forbidden significant effect upon fares" because "[a]dvertising 'serves to inform the public of the . . . prices of products and services, and thus performs an indispensable role in the allocation of resources.' " (*Ibid.*) Thus, the court held the fare advertising provisions of the guidelines were preempted by the ADA. (504 U.S. at p. 391.)

The Supreme Court again considered the scope of the ADA's preemption clause in *Wolens, supra,* 513 U.S. 219. *Wolens* was an appeal from two consolidated state court class action suits. The plaintiffs in both actions participated in American Airlines's frequent flyer program, AAdvantage. The plaintiffs asserted that modifications to the AAdvantage program devalued already-earned mileage credits. They conceded that American had the right to change its program's terms and conditions *prospectively,* but they asserted that the *retroactive* application of modifications—i.e., devaluing credits previously accumulated—violated the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) and constituted a breach of contract. (513 U.S. at pp. 224–225.)

The court held that, under *Morales,* the plaintiffs' complaints plainly stated claims " 'relating to [air carrier] rates, routes, or services.' " (*Wolens, supra,* 513 U.S. at p. 226.) It explained: "Plaintiffs' claims relate to 'rates,' *i. e.,* American's charges in the form of mileage credits for free tickets and upgrades, and to 'services,' *i. e.,* access to flights and class-of-service upgrades unlimited by retrospectively applied capacity controls and blackout dates." (*Ibid.*) The court noted, however, that the ADA's preemption clause "contains other words in need of interpretation, specifically, the words 'enact or enforce any law' in the instruction: '[N]o State . . . shall enact or enforce any law . . . relating to [air carrier] rates, routes, or services.' 49 U. S. C. App. § 1305(a)(1)." (513 U.S. at p. 226.) Accordingly, the court considered whether the plaintiffs' claims were based on laws " '*relating to [air carrier] rates, routes, or services*' " within the meaning of the ADA. (513 U.S. at pp. 226–227, italics added.)

The court held that the plaintiffs' Consumer Fraud Act claims were preempted by the ADA.[1] It explained: "[T]he . . . Consumer Fraud Act serves as a means to guide and police the marketing practices of the airlines; the Act

---

[1] The Consumer Fraud Act declared unlawful " '[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" . . . in the conduct of

does not simply give effect to bargains offered by the airlines and accepted by airline customers. In light of the full text of the preemption clause, and of the ADA's purpose to leave largely to the airlines themselves, and not at all to States, the selection and design of marketing mechanisms appropriate to the furnishing of air transportation services, we conclude that § 1305(a)(1) preempts plaintiffs' claims under the Consumer Fraud Act." (*Wolens, supra,* 513 U.S. at p. 228, fn. omitted.)

■ The court reached a different result with regard to plaintiffs' breach of contract claims. It said: "We do not read the ADA's preemption clause . . . to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings. As persuasively argued by the United States, terms and conditions airlines offer and passengers accept are privately ordered obligations 'and thus do not amount to a State's "enact[ment] or enforce[ment] [of] any law, rule, regulation, standard, or other provision having the force and effect of law" within the meaning of [§ ]1305(a)(1).' [Citation.] A remedy confined to a contract's terms simply holds parties to their agreements—in this instance, to business judgments an airline made public about its rates and services. [Fns. omitted.]" (*Wolens, supra,* 513 U.S. at pp. 228–229.)

### B.

Since *Wolens,* the Supreme Court has not again opined on the preemptive scope of the ADA. However, in *Rowe v. New Hampshire Motor Transp. Assn.* (2008) 552 U.S. 364, 368 [169 L.Ed.2d 933, 128 S.Ct. 989] (*Rowe*), it considered the scope of the preemption clause of the Federal Aviation Administration Authorization Act of 1994 (Pub.L. No. 103-105 (Aug. 23, 1994) 108 Stat. 1569), which contained the following preemption clause modeled on the ADA: " '[A] State . . . may not enact or enforce a law . . . related to a price, route, or service of any motor carrier . . . with respect to the transportation of property.' " The court held that this clause preempted two provisions of Maine law that regulated the delivery of tobacco to customers within the state. (552 U.S. at p. 367.) It noted that in *Morales,* it had described Congress's goal in enacting the ADA as "helping assure transportation rates, routes, and services that reflect 'maximum reliance on competitive market forces,' thereby stimulating 'efficiency, innovation, and low prices,' as well as 'variety' and 'quality.' " (*Rowe, supra,* at p. 371.) Thus, *Morales* had held "(1) that '[s]tate enforcement actions *having a connection with, or reference to'* carrier " 'rates, routes, or services" are pre-empted . . .' [citation]; (2) that such pre-emption may occur even if a state

any trade or commerce . . . .' Ill. Comp. Stat., ch. 815, § 505/2 (1992) (formerly codified at Ill. Rev. Stat., ch. 121 1/2, ¶ 262 (1991))." (*Wolens, supra,* 513 U.S. at p. 227.)

law's effect on rates, routes or services 'is only indirect . . .' [citation]; (3) that, in respect to pre-emption, it makes no difference whether a state law is 'consistent' or 'inconsistent' with federal regulation [citation]; and (4) that pre-emption occurs at least where state laws have a 'significant impact' related to Congress' deregulatory and pre-emption-related objectives [citation]." (*Rowe, supra,* at pp. 370–371.) *Morales* further said that "federal law might not pre-empt state laws that affect fares in only a 'tenuous, remote, or peripheral . . . manner . . .' . . . ." (*Rowe, supra,* at p. 371.) However, the court noted, *Morales* "did not say where, or how, 'it would be appropriate to draw the line,' for the state law before it did not 'present a borderline question.' " (*Rowe, supra,* at p. 371.)

The court held that, under *Morales,* the Maine tobacco law was preempted by the ADA because it "has a 'significant' and adverse 'impact' in respect to the federal Act's ability to achieve its pre-emption-related objectives." (*Rowe, supra,* 552 U.S. at pp. 371–372.) It explained: "The Solicitor General and the carrier associations claim (and Maine does not deny) that the law will require carriers to offer a system of services that the market does not now provide (and which the carriers would prefer not to offer). And even were that not so, the law would freeze into place services that carriers might prefer to discontinue in the future. The Maine law thereby produces the very effect that the federal law sought to avoid, namely, a State's direct substitution of its own governmental commands for 'competitive market forces' in determining (to a significant degree) the services that motor carriers will provide." (*Id.* at p. 372.)

The court concluded: "The provision . . . requires the carrier to check each shipment for certain markings and to compare it against the Maine attorney general's list of proscribed shippers. And it thereby directly regulates a significant aspect of the motor carrier's package pickup and delivery service. In this way it creates the kind of state-mandated regulation that the federal Act pre-empts. [¶] . . . [T]o interpret the federal law to permit these, and similar, state requirements could easily lead to a patchwork of state service-determining laws, rules, and regulations. That state regulatory patchwork is inconsistent with Congress' major legislative effort to leave such decisions, where federally unregulated, to the competitive marketplace." (*Rowe, supra,* 552 U.S. at p. 373.)

## II. *Tanen's Claims Relate to "Airline Rates, Routes, or Services"*

 Taken together, *Morales, Wolens,* and *Rowe* stand for the proposition that for a claim to be preempted by the ADA, " 'two things must be true[:] (1) the claim must derive from the enactment or enforcement of state law, and (2) the claim must relate to airline rates, routes, or services, either by

expressly referring to them or by having a significant economic effect upon them.' " (*All World Professional Travel Services, Inc. v. American Airlines, Inc.* (C.D.Cal. 2003) 282 F.Supp.2d 1161, 1168.) We thus consider in this part whether Tanen's claims relate to "airline rates, routes, or services"; in the next part, we consider whether Tanen's claims derive from the enactment or enforcement of state law.

## A.

There appears to be no real disagreement between the parties that Tanen's claims do not relate to "rates" or "routes." They do not agree, however, as to whether the claims relate to "services." Southwest claims that Tanen's claims relate to "services"—namely, its sale of gift certificates that can be used to purchase " 'travel nationwide.' " Tanen disagrees, urging that state laws regulating expiration dates of gift certificates are, "at best, only tangentially 'related to a rate, route or service of an air carrier.' " For the following reasons, Southwest is correct.

## B.

As many courts have noted, the federal circuit courts have not devised a uniform test for determining whether a state law action is related to an airline's "rates, routes, or services." (See *Aquino v. Asiana Airlines, Inc.* (2003) 105 Cal.App.4th 1272, 1282 [130 Cal.Rptr.2d 223].) To the contrary, "[t]he Courts of Appeals . . . have taken directly conflicting positions on this question of statutory interpretation." (*Northwest Airlines, Inc. v. Duncan* (2000) 531 U.S. 1058 [148 L.Ed.2d 571, 121 S.Ct. 650] [dissent from denial of petition for writ of certiorari]; see also *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.* (3d Cir. 1998) 164 F.3d 186, 192 ["In the absence of definitive guidance from the Supreme Court, the Courts of Appeals have struggled with the relationship between the [ADA's] preemption clause and state tort claims. The rulings have not been consistent . . . ."].)

At least three circuits have held that "services" " 'generally represent a bargained-for or anticipated provision of labor from one party to another. . . . Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself. These matters are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline.' " (*Hodges v. Delta Airlines, Inc.* (5th Cir. 1995) 44 F.3d 334, 336; see *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia* (7th Cir. 1996) 73 F.3d 1423, 1433; *Branche v. Airtran Airways, Inc.*

(11th Cir. 2003) 342 F.3d 1248, 1257.) Applying this standard, these circuits have concluded that the ADA does not preempt a variety of tort claims, including claims for personal injury, defamation, and retaliatory discharge, because enforcement of such tort duties "normally will not have 'the forbidden significant effect' on airlines' services." (*Hodges, supra,* at p. 339 [passenger's personal injury claim was not preempted; "Congress intended to prevent the states from regressing on economic deregulation by applying their own laws or rules concerning 'services,' but . . . explicitly preserved airlines' duty to respond to tort actions . . . for physical injury or property damage."]; *Travel All Over the World, Inc., supra,* at p. 1433 [defamation claims asserted against airline by travel agency were not preempted: "These statements, although they refer to [*travel agency's*] services, certainly do not refer to [*airline's*] rates, routes, or services—in fact, these statements do not refer to [airline] at all. Moreover, the statements themselves are not 'services' provided by [airline] within the meaning of the ADA."]; *Branche, supra,* at pp. 1256–1257 [adopting Fifth Circuit's "more expansiv[e]" definition of service; held: plaintiff's retaliatory discharge claim not preempted by ADA].)

Two other circuits have taken a somewhat different approach. In *Charas v. Trans World Airlines, Inc.* (9th Cir. 1998) 160 F.3d 1259, the Ninth Circuit said that "in enacting the ADA, Congress intended to preempt only state laws and lawsuits that would adversely affect the economic deregulation of the airlines and the forces of competition within the airline industry." (*Id.* at p. 1261.) However, "[n]othing in the Act itself, or its legislative history, indicates that Congress had a 'clear and manifest purpose' to displace state tort law in actions that do not affect deregulation in more than a 'peripheral manner.' " (*Id.* at p. 1265.) Accordingly, the court concluded as follows: "[W]hen Congress enacted *federal* economic deregulation of the airlines, it intended to insulate the industry from possible *state* economic regulation as well. It intended to encourage the forces of competition. It did not intend to immunize the airlines from liability for personal injuries caused by their tortious conduct. Like 'rates' and 'routes,' Congress used 'service' in § 1305(a)(1) in the public utility sense—i.e., the provision of air transportation to and from various markets at various times. In that context, 'service' does not refer to the pushing of beverage carts, keeping the aisles clear of stumbling blocks, the safe handling and storage of luggage, assistance to passengers in need, or like functions." (*Id.* at p. 1266; see also *Taj Mahal Travel, Inc. v. Delta Airlines, Inc., supra,* 164 F.3d at pp. 188, 194 [defamation claims brought by a travel agency against an airline held not preempted by the ADA; "[W]e do not find it conceptually helpful to distinguish 'operation or maintenance of aircraft' from 'service.' The approach espoused by the Court of Appeals for the Ninth Circuit in *Charas* offers a more promising solution. It is consistent with *Wolens*' observation that the preemption clause was intended to prevent the states from re-regulating airline

operations so that competitive market forces could function. [Citation.] From that standpoint, the proper inquiry is whether a common law tort remedy frustrates deregulation by interfering with competition through public utility-style regulation. [Citation.] When state law does not have a regulatory effect, it is 'too tenuous, remote, or peripheral' to be preempted."].)

The Second Circuit took what appears to be a third approach in *Air Transport Assn. of America, Inc. v. Cuomo* (2d Cir. 2008) 520 F.3d 218 (*Air Transport*). There, it considered whether the ADA preempted the New York State Passenger Bill of Rights (PBR), which required airlines to provide passengers with food, water, electricity and waste removal services "[w]henever airline passengers have boarded an aircraft and are delayed more than three hours on the aircraft prior to takeoff." (520 F.3d at p. 220.) In concluding that the PBR was preempted, the court expressly rejected *Charas's* definition of services as inconsistent with the Supreme Court's decision in *Rowe*, where "the Court necessarily defined 'service' to extend beyond prices, schedules, origins, and destinations." (*Air Transport, supra,* at p. 223.) The court did not adopt the approach of *Hodges* and its progeny, however. Instead, it looked to the PBR's effect on a competitive marketplace: "The unanimous *Rowe* opinion held that Maine's law resulted in Maine's 'direct substitution of its own governmental commands for "competitive market forces" ' in determining 'the services that motor carriers will provide' to their customers. [Citation.] In this respect, the PBR is indistinguishable. It substitutes New York's commands for competitive market forces, requiring airlines to provide the services that New York specifies during lengthy ground delays and threatening the same 'patchwork of state service-determining laws, rules, and regulations' that concerned the Court in *Rowe*. [Fn. omitted.]" (*Air Transport, supra,* at pp. 223–224.)

## C.

■ As the prior part demonstrates, the federal circuit courts have adopted a variety of definitions of "services."[2] What we find striking about the federal cases, however, is not their differences, but their similarities. That is, notwithstanding the differences between the particular tests the courts have formulated, nearly all have grounded their analyses in the effects on competition of the particular state laws at issue, deeming preempted those claims that substitute state regulation for competitive market forces.

[2] Plaintiff cites *People v. Western Airlines* (1984) 155 Cal.App.3d 597 [202 Cal.Rptr. 237] for the proposition that "California case law . . . strongly supports" his contention that his claims do not relate to "services." We do not agree. *Western Airlines* predates *Morales* and *Wolens* and reaches a result inconsistent with these cases. We thus believe that *Western Airlines* is no longer good authority in light of *Morales*, and Tanen's reliance on it to support his position in this case is misplaced.

Applying that approach here, we conclude that, to the extent plaintiff's claims are based on Civil Code section 1749.5, they are preempted by the ADA. As in *Rowe*, applying section 1749.5 in the manner Tanen urges would result in California's "direct substitution of its own governmental commands for 'competitive market forces' " in determining the kinds of travel certificates airlines provide their customers. (*Rowe, supra*, 552 U.S. at p. 372.) In other words, it would require airlines to offer travel certificates that are redeemable at any time, rather than permit them to offer travel certificates with varying expiration dates. Further, applying section 1749.5 to Southwest's travel certificates would require Southwest to offer services that it did not provide, i.e., travel certificates that could be used at any time. Finally, to interpret the ADA to permit states to impose their own requirements on the services Southwest offers nationally "could easily lead to a patchwork of state service-determining law, rules, and regulations." (552 U.S. at p. 373.) That "state regulatory patchwork is inconsistent with Congress' major legislative effort to leave such decisions, where federally unregulated, to the competitive marketplace." (*Ibid.*)

Tanen attempts to avoid this result by suggesting that his case is analogous to *Charas* because it involves provisions of amenities that are only tangentially related to rates, routes, and services: "At issue are the *expiration dates* for gift certificates that are used to purchase not only flights but other amenities such as in-flight beverages. Congress did not have a 'clear and manifest purpose' to displace state regulation permitting the extension of a form of payment, let alone the form of payment for an in-flight beverage." We do not agree. As an initial matter, we agree with Southwest that nothing in the record suggests that Southwest's travel certificates can be used to purchase anything other than airline tickets: Tanen asserts in his complaint that travel certificates can be used to purchase "*travel* nationwide," and the travel certificate attached to his complaint states that it "may only be redeemed for *air travel* on Southwest Airlines." (Italics added.) In any case, there is no dispute that travel certificates can be redeemed for airline tickets, regardless of whether they also can be redeemed for drink coupons.

Tanen also attempts to demonstrate that, as in *Charas*, his case concerns "peripheral services and amenities," presumably because gift certificates are only a minor part of Southwest's business. Again, we do not agree. What is relevant under *Wolens* and the other federal cases discussed above is not whether the *services* provided by the airline are "peripheral," but rather whether the relevant *state laws* have a direct or "peripheral" effect on deregulation. *Charas* and other cases concluded that the ADA did not displace state tort laws because providing a remedy for personal injuries has only a peripheral effect on competition—presumably because airlines do not compete on the basis of the remedies they will offer passengers who are injured during flights. Airlines *do* compete with one another with regard to

the various services they provide, and passengers may well choose to purchase a travel certificate on one airline rather than another based on the certificate's expiration date or lack thereof. Accordingly, Civil Code section 1749.5 is not "peripheral" to airline competition and deregulation within the meaning of *Charas* and related cases.

### D.

Our conclusion here is consistent with a number of decisions that considered ADA preemption in the related context of nonrefundable airline tickets. In *Howell v. Alaska Airlines, Inc.* (2000) 99 Wn.App. 646 [994 P.2d 901] (*Howell*), the plaintiff filed suit on behalf of himself and a class of persons who purchased nonrefundable airline tickets from Alaska Airlines and were refused refunds when they were unable to travel as planned. The plaintiff alleged that the ticket contracts were void on the grounds of frustration of purpose, impossibility of performance, illusory promises, substantive and procedural unconscionability, breach of the duty of good faith and fair dealing, and unjust enrichment. He also claimed that by refusing refunds, Alaska violated Washington's Consumer Protection Act. (994 P.2d at p. 902.) The court concluded that the plaintiff's claims were preempted by the ADA. It explained: "[T]he contract between Alaska and each of the appellants authorized the airline to take the action now challenged—here, the refusal to refund the purchase price of the ticket. In their complaint, the appellants do not seek to enforce the contract according to its terms. Rather, they seek to have this action declared unlawful by application of state laws and policies external to the parties' agreement. In other words, the appellants are attempting to enlarge or enhance their agreements with Alaska based on the laws or policies of this state that are external to the agreements. Under the ADA, particularly as construed by the Supreme Court in *Wolens*, the appellants' claims are preempted." (994 P.2d at p. 905.)

The court reached a similar result in *Boon Ins. Agency, Inc. v. American Airlines, Inc.* (Tex.App. 2000) 17 S.W.3d 52 (*Boon*). There, the plaintiff purchased nonrefundable "economy" tickets from the defendants. The tickets provided that if passengers did not fly as ticketed, they could apply their original fares toward new airline tickets for a specified period of time, but would be charged a $50 to $75 "reissue fee." If the tickets were not used or reissued, the fares would be forfeited. Plaintiff challenged the forfeiture and reissue fee provisions, asserting that they constituted illegal forfeitures and penalties and, thus, were unenforceable under state law. (*Id.* at p. 55.) The court held that these claims were preempted by the ADA. It explained: "It is undisputed that in each instance of an economy-class ticket purchase by Boon a binding contract, a contract of carriage, was created between Boon and the airline. Each contract included the authorization of a

surcharge if the ticket was changed. Boon does not look to enforce the contract as written but instead seeks to modify the terms of the contract itself by relying on state law. This Court 'is confined, in breach of contract actions, to the parties' bargain, with no enlargement or enhancement based on state law or policies external to the agreement.' *Wolens,* 513 U.S. at 223. If we were to adjudicate Boon's claim, we would be applying state policy and law to determine the propriety of the reissue fee. Such application of state law is preempted by the Act." (*Boon, supra,* 17 S.W.3d 52 at pp. 58–59; see also *Leonard v. Northwest Airlines, Inc.* (Minn.Ct.App. 2000) 605 N.W.2d 425 [passenger's state law challenge to airline's $75 "reissue fee" was preempted by the ADA]; *Blackner v. Continental Airlines, Inc.* (App.Div. 1998) 311 N.J. Super. 10 [709 A.2d 258] [ADA preempted claim that $60 fee for reissuing lost ticket was an unlawful penalty under state law: "Plaintiff's suit clearly falls on the prohibited side of the line drawn in *Wolens.* The essence of her claim is an 'enlargement or enhancement [of her rights] based on state laws or policies external to the agreement,' which, she says, should invalidate a portion of the contract between her and the airline. The complaint violates the essence of the preemption provision of § 1305(a)(1) and thus it cannot stand."].)

 As in *Howell* and *Boon,* the contract between Tanen and Southwest contained clear language limiting travel to particular dates—i.e., to one year after the travel certificate was purchased. Also as in *Howell* and *Boon,* Tanen does not seek to enforce the contract according to its terms, but rather to have contractually imposed limitations declared unlawful through the application of a state law external to the parties' agreement. As construed by *Morales* and *Wolens,* the ADA forbids such state law interference with airline travel.

III. *Tanen's Claims Derive from the "Enactment or Enforcement of a State Law"*

A claim is not preempted simply because it relates to "rates, routes, or services"; it also must rely on the "enact[ment] or enforce[ment]" of state law. (*Wolens, supra,* 513 U.S. at p. 226.) Tanen contends that his fourth cause of action, for breach of contract, does not rely on the enactment or enforcement of state law. Specifically, he contends that that cause of action does not depend on the state's enactment of Civil Code section 1749.5, but rather on Southwest's *voluntary agreement* to be bound by the requirements of that section. Thus, he claims that his breach of contract claim is not preempted.[3]

---

[3] Tanen does not make a similar contention with regard to any of his other causes of action; any such contention therefore is forfeited. (E.g., *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 793, fn. 2 [108 Cal.Rptr.3d 806, 230 P.3d 342] ["[P]laintiff did not raise this issue on appeal and therefore has forfeited it."].)

We do not agree. In support of his claim that Southwest voluntarily agreed to be bound by Civil Code section 1749.5, Tanen relies on the statement in Southwest's order form that " '[a]ll gift certificates expire one year from the date of issue and will not be extended *unless prohibited by law.*' " (Italics added.) But as Southwest correctly notes, "law" necessarily refers not only to state law, but to federal law as well. Thus, the contract cannot be read to incorporate *preempted* state law. (See, e.g., *Fidelity Federal Sav. & Loan Assn. v. de la Cuesta* (1982) 458 U.S. 141, 148, 157 [73 L.Ed.2d 664, 102 S.Ct. 3014] [provision that deed " 'shall be governed by the law of the jurisdiction in which the Property is located' " did not incorporate preempted state law; "the incorporation of state law does not signify the inapplicability of federal law, for 'a fundamental principle in our system of complex national polity' mandates that 'the Constitution, laws, and treaties of the United States are as much a part of the law of every State as its own local laws and Constitution' "].)

*In re American Airlines, Inc. Privacy Litigation* (N.D.Tex. 2005) 370 F.Supp.2d 552 (*In re American Airlines*), on which Tanen relies, does not compel a different result. There, the plaintiffs alleged that the defendant American Airlines (American) disclosed confidential passenger name records without the passengers' consent. This disclosure was alleged to violate American's privacy policy, which represented that American would not sell customer information or share a customer's e-mail address with third parties unless "required by law," and thus constituted a breach of contract. (370 F.Supp.2d at p. 556.) American contended that the breach of contract claim was preempted by the ADA because it could not be adjudicated without resort to outside sources of law. (*Id.* at p. 565.) The court disagreed: "*Wolens* differentiates between holding an airline to the bargain it struck and to one enlarged or enhanced by state laws or policies external to the agreement. In this case, as plaintiffs have pleaded their claim, American agreed to be bound to its privacy policy, except as required by law. In other words, the laws that American maintains are external to the contract are expressly incorporated into it." (*Id.* at p. 566.)

■ *In re American Airlines* does not compel the result Tanen suggests. While it does stand for the proposition that statutes may be relevant to a breach of contract claim where a contract expressly incorporates the "law," it does not suggest that "law" means exclusively state law. To the contrary, *In re American Airlines* concerned an airline's disclosure of personal information to the Transportation Security Administration, a federal agency, and thus presumably concerned federal law.

## DISPOSITION

The judgment of dismissal is affirmed. Southwest shall recover its costs on appeal.

Epstein, P. J., and Willhite, J., concurred.