Filed 4/6/15  6th Street Investors v. Hanmi Bank CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| 6TH STREET INVESTORS, LLC,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>HANMI BANK,<br><br>　　　Defendant and Respondent. | B255435<br><br>(Los Angeles County<br>Super. Ct. No. BC508746) |

　　　APPEAL from a judgment of the Superior Court of Los Angeles County. Deirdre Hill, Judge.  Affirmed.


　　　Salisian │ Lee, Richard H. Lee, H. Han Pai for Plaintiff and Appellant.


　　　Frandzel Robins Bloom & Csato, Hal D. Goldflam, Brad R. Becker for Defendant and Respondent.


_____

Plaintiff 6th Street Investors, LLC, acquired a dilapidated apartment building after purchasing a note in default from defendant Hanmi Bank. More than three years later, plaintiff sued the bank for concealment and misrepresentation. The trial court dismissed the action, finding that it is barred by the statute of limitations and does not allege facts sufficient to state a claim. After de novo review, we affirm.

## FACTS

### *The Complaint*

In 2006, Hanmi Bank (the Bank) loaned Hoover & Venice, LLC (Hoover) $1.6 million to purchase a 46-unit apartment house on West Sixth Street in Los Angeles (the Property). The note was secured by a deed of trust on the Property. Hoover allowed the Property to become substandard and untenantable, and was cited numerous times by the Los Angeles Housing Department (LAHD) from 2006 to 2008. In 2008, LAHD placed the Property into its Rent Escrow Account Program (REAP).

Hoover defaulted on the note. The Bank recorded a notice of default in 2009, and a trustee's sale was scheduled, but not conducted. Instead, the Bank marketed Hoover's note. A number of adverse conditions affected the Property: it flooded in February 2010; it was in REAP; and it was substandard. The Bank did not take possession of the Property or appoint a referee to manage it. It refused to allow potential purchasers of the note to inspect the Property, including plaintiff.

Unaware of the adverse conditions at the Property, plaintiff paid $934,000 for the note and entered a Loan Purchase and Sale Agreement (Agreement) with the Bank on April 1, 2010. The Bank assigned the note and deed of trust to plaintiff on April 8, 2010. One week later, plaintiff held a foreclosure sale and became the owner of the Property.

After taking title, plaintiff discovered that the Property was in REAP and in a dilapidated condition. Inconsistently, plaintiff alleges that the Bank "[m]isrepresented that the Property was almost out of REAP and that it would not take much to get it out of REAP." Plaintiff spent over $3.5 million to make repairs on the Property, but was sued (along with Hoover) in an action brought by 36 tenants living at the Property. Discovery during the tenant lawsuit showed that the Bank knew of flooding and substandard

2

conditions at the Property in early 2010. The tenant lawsuit was eventually dismissed with prejudice.

On May 13, 2013, plaintiff filed a complaint with four causes of action. First, fraud arising from the Bank's concealment of known adverse conditions at the Property, including REAP status, flooding and substandard conditions, which was intended to induce plaintiff into entering the Agreement; plaintiff relied upon those omissions and would not have purchased the loan or the Property had the true facts been disclosed. Second, the Bank intentionally misrepresented that the Property was almost out of REAP. Third, negligent misrepresentation based on the same facts. Fourth, breach of the implied covenant of good faith and fair dealing.

The Bank demurred to the complaint, and asked the trial court to take judicial notice of the LAHD's REAP website; the Agreement between the parties; a recorded 2008 LAHD document declaring the Property to be hazardous, substandard or a nuisance; a recorded 2009 document placing the Property in REAP; and a recorded 2009 notice of noncompliance for substandard rental housing. Plaintiff objected to the request for judicial notice. Its objections were overruled.

The trial court sustained the demurrers with leave to amend. It found merit to the Bank's argument that the fraud and misrepresentation causes of action are time-barred. Further, the claims are not supported by the facts: the dilapidated conditions were publicly known based on recorded documents, which showed that the Property was in REAP. Plaintiff indicated that it completed due diligence and waived its right to inspect the Property. Plaintiff failed to allege facts showing bad faith.

*The First Amended Complaint*

After filing a first amended complaint, plaintiff asked the Bank to stipulate to another amendment. The Bank agreed, and the trial court approved the stipulation.

*The Second Amended Complaint*

In a second amended complaint (SAC), plaintiff reiterated its purchase of the note from the Bank. Plaintiff omitted allegations that the Bank concealed the Property's REAP status. Instead, the SAC alleges that the Bank "specifically represented" the

3

REAP status to plaintiff:  the parties' Agreement attached to the SAC expressly states that the Property is in REAP and the tenants are paying rent into REAP.  Plaintiff alleged that the Bank downplayed the Property's condition, and plaintiff was unable to discover the extent of the dilapidation until it took title to the Property on April 15, 2010.  The SAC asserts causes of action for fraudulent concealment, and negligent and intentional misrepresentation.  The Bank demurred, again asserting the statute of limitations and plaintiff's failure to state a claim.

The trial court sustained the demurrers without leave to amend.  It ruled that each of plaintiff's claims is time-barred.  Plaintiff had three years from April 2010 to pursue its claims.  The lawsuit filed on May 13, 2013, is untimely.  Plaintiff presented a "sham" pleading by changing factual allegations about its knowledge of the Property's REAP status.  Plaintiff knew that the Property was in REAP, and was "on notice to conduct due diligence to determine the nature and extent of the property's problems."  The dilapidated condition was publicly known based on recorded documents, yet plaintiff waived its right to conduct due diligence.  Plaintiff failed to allege facts demonstrating that the Bank concealed the Property's condition.  The opinions of Bank employees that it would not take much effort to get the Property out of REAP are not actionable misrepresentations of fact.  The court dismissed the action on April 3, 2014.  The appeal is timely.

## DISCUSSION

### 1. Ruling on Demurrer

Appeal lies from the judgment of dismissal after demurrers are sustained without leave to amend.  (Code Civ. Proc., §§ 581d, 904.1, subd. (a)(1); *Serra Canyon Co. v. California Coastal Com.* (2004) 120 Cal.App.4th 663, 667; *Tanen v. Southwest Airlines Co.* (2010) 187 Cal.App.4th 1156, 1162.)  We review de novo the ruling on the demurrers, exercising our independent judgment to determine whether a cause of action has been stated.  (*Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1115.)  We assume that properly pleaded material allegations are true.  (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)

4

## 2. Statute of Limitations

The statute of limitations may be asserted on demurrer, when the grounds for the defense are disclosed on the face of the complaint or from matters judicially noticed. (*Vaca v. Wachovia Mortgage Corp.* (2011) 198 Cal.App.4th 737, 746; *Iverson, Yoakum, Papiano & Hatch v. Berwald* (1999) 76 Cal.App.4th 990, 995.)  A claim for negligent misrepresentation must be filed within two years.  (Code Civ. Proc., § 339(1); *Ventura County Nat. Bank v. Macker* (1996) 49 Cal.App.4th 1528, 1529-1531.)  The statute of limitations for fraudulent concealment is three years, but the cause of action "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud."  (Code Civ. Proc., § 338(d); *Mills v. Mills* (1956) 147 Cal.App.2d 107, 121.)

Under the discovery rule, the cause of action accrues and the statute of limitations begins to run when the plaintiff suspects or should suspect that his or her injury was caused by someone's wrongdoing.  (*Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926, 932.)  "[T]he discovery rule most frequently applies when it is particularly difficult for the plaintiff to observe or understand the breach of duty, or when the injury itself (or its cause) is hidden or beyond what the ordinary person could be expected to understand."  (*Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1248.)  If the defendant conceals a cause of action, the statute is tolled "as long as a plaintiff's reliance on the misrepresentation is reasonable."  (*Grisham v. Philip Morris U.S.A., Inc.* (2007) 40 Cal.4th 623, 637.)

A plaintiff who claims delayed discovery must show that he "was not at fault for failing to discover [his cause of action] or had no actual or presumptive knowledge of facts sufficient to put him on inquiry."  (*Community Cause v. Boatwright* (1981) 124 Cal.App.3d 888, 900.)  When the basis for a claim is a matter of public record, the records may impart "presumptive notice" of the claim.  (*Prudential Home Mortgage Co. v. Superior Court* (1998) 66 Cal.App.4th 1236, 1247-1248.)  "'So, when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation (such as public

records . . .), the statute commences to run.'" (*Baker v. Beech Aircraft Corp.* (1979) 96 Cal.App.3d 321, 327-328.)  If a demurrer shows the pleading is untimely, plaintiff bears the burden of showing delayed discovery, even at the pleading stage.  (See *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1197.)

Plaintiff entered the Agreement with the Bank to purchase Hoover's loan on April 1, 2010.  One week later, the Bank assigned the note and the deed of trust to plaintiff.  Plaintiff purchased the Property at a foreclosure sale on April 15, 2010.  It alleges that the Bank intentionally concealed or misrepresented the dilapidated condition of the Property, and plaintiff was prevented from discovering the Property's condition, which was so substandard that the government placed the Property in REAP.  Plaintiff would not have purchased Hoover's note or the Property had it known the true condition of the Property.

In its original complaint, plaintiff alleged that it became aware of the Property's dilapidated condition when it took title to the Property on April 15, 2010; since then, plaintiff has worked diligently to repair the Property.  In defense, the Bank asserted the statute of limitations.  To avoid the three-year statutory period, plaintiff now contends that it lacked knowledge necessary to put it on inquiry notice until (1) *after* it gained ownership in April 2010, (2) *after* LAHD completed a walk-through of the Property with plaintiff and tenant representatives on May 11, 2010, and (3) *after* LAHD wrote up its findings and transmitted them to plaintiff.  Plaintiff maintains that it could not begin to discover or suspect the Bank's wrongdoing until it received LAHD's report on May 14, 2010.  Plaintiff reasons that the lawsuit filed May 13, 2013, was timely due to its delayed discovery of "what exactly was wrong with the Property."

Plaintiff's argument fails for several reasons.

First, plaintiff originally pleaded that it discovered the dilapidated condition of the Property upon taking title in April 2010.  It is bound by this admission, made before the Bank asserted the statute of limitations.  Thus, the claim accrued and the statute began to run in April 2010, making the May 2013 filing of the complaint untimely.

6

Second, plaintiff misapprehends the discovery rule in claiming that it was not on inquiry notice until it received LAHD's report on the Property, which gave plaintiff all the facts. A claim is discovered when plaintiff *suspects or should suspect* that someone committed wrongdoing, putting a reasonable person on inquiry. "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1111.)

Plaintiff could see the poor condition of the Property when it took possession on April 15, 2010.[1] Even earlier, plaintiff was placed on inquiry notice when the Bank informed plaintiff that the Property was in REAP, before plaintiff purchased the note. Plaintiff had an opportunity to obtain information regarding the Property. LAHD recorded a notice in 2008 that the Property is "a substandard building and a nuisance" in violation of municipal and state law. In 2009, LAHD recorded a notice that the Property was placed in REAP "for outstanding habitability violations." Plaintiff should have suspected wrongdoing years before the Bank's general counsel testified about Property defects during a 2013 deposition.

"Where . . . as in this case, the allegations bearing upon the issue of whether plaintiff had constructive notice of allegedly undiscovered facts would support only one legitimate inference, the question becomes one of law." (*Saliter v. Pierce Brothers Mortuaries* (1978) 81 Cal.App.3d 292, 300.) Given plaintiff's ability to freely examine the Property after taking possession and its knowledge of REAP status arising from substandard conditions, it is clear that plaintiff's claims accrued, *at the latest*, by April 15, 2010. The complaint filed in May 2013 is barred by the statute of limitations.

---

[1]     At the hearing on the Bank's first demurrer, plaintiff's attorney conceded that "you don't really have to do that much due diligence to figure [ ] out" that the building was in a dilapidated condition, so the issue was not that the condition was hidden.

7

### 3. **Failure to State a Claim**

Plaintiff attached the Agreement to the SAC and incorporated it by reference. Evidentiary facts found in exhibits attached to a complaint can be considered on demurrer. (*Frantz v. Blackwell* (1987) 189 Cal.App.3d 91, 94.) "The facts recited in a written instrument are conclusively presumed to be true as between the parties thereto . . . ." (Evid. Code, § 622.) "Any allegations in the complaint which are inconsistent with facts set out in an unambiguous written instrument, incorporated by reference, may be stricken. [Citations.] In other words, if there are inconsistencies between the complaint and the written instrument, the written instrument controls." (*Fundin v. Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 955; *Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 505 [if the allegations in the complaint "conflict with the content of the exhibits to the complaint, we rely on and accept as true the contents of the exhibits and treat as surplusage the pleader's allegations as to the legal effect of the exhibits"].)

The Agreement states that plaintiff purchased the note "as is" and "with all faults" and "without representation or warranty, whether express or implied" and "without recourse of any kind." The Agreement stipulates (under "Buyer's Inspections") that plaintiff "has completed its due diligence of the Property and has approved or otherwise approves its due diligence, examination, review and investigation of the facts and circumstances necessary to evaluate the Loan, . . . and the Property, as it deems necessary or appropriate to form the basis for its evaluation of the purchase contemplated herein, including, but not limited to, the following: physical condition of the property relating to the Deed of Trust . . . ." Plaintiff "is assuming all risks with respect to . . . any information pertaining to the Property." Finally, the Agreement has an integration clause stating that the instrument is the parties' entire agreement and supersedes any other agreements, negotiations, communications, understandings and commitments, whether written or oral, and provides that each party has been advised by its own attorneys and is not relying on any oral or written representation.

8

The allegations in the complaint are in conflict with the Agreement. Plaintiff now claims, contrary to the Agreement, that it did not purchase the note "as is" or "with all faults." Further, plaintiff now claims that the Bank made express or implied representations, and that, in fact, plaintiff did not complete its due diligence of the Property or investigate the facts and circumstances necessary to evaluate its purchase of Hoover's loan, including the physical condition of the Property. In short, plaintiff contends that everything it expressly agreed to in writing is simply untrue.

The facts in the Agreement are conclusively presumed to be true: a party is estopped to deny essential facts recited in a contract. (Evid. Code, § 622; *Citizens Business Bank v. Gevorgian* (2013) 218 Cal.App.4th 602, 625.) Plaintiff does not deny that it signed the Agreement. To avoid the express provisions in the Agreement and the effect of Evidence Code section 622, plaintiff maintains that the Agreement was induced by fraud. Section 622 "does not bar an assertion of fraud or other grounds for rescission" of a contract. (*Bruni v. Didion* (2008) 160 Cal.App.4th 1272, 1291; *Citizens Business Bank*, at p. 625.) Plaintiff does not seek to rescind the Agreement.

The REAP status of the Property was known to plaintiff before it bid on the note or purchased the Property at the foreclosure sale, apart from the express stipulations in the Agreement that plaintiff inspected and investigated the physical condition of the Property, was not relying on any representations, and assumed all risks. Plaintiff discussed the REAP status with the Bank's employees. When issues affecting real property are a matter of public record within the purchaser's diligent attention, the purchaser has its "own duty to ascertain the precise nature and scope" of the material issues affecting its decision to purchase the property. (*Pagano v. Krohn* (1997) 60 Cal.App.4th 1, 12.)

Plaintiff cannot state a claim based on misrepresentation or fraud when pertinent information relating to the Property's condition was available in public records, prior to its purchase. If the Bank prevented plaintiff from inspecting the Property, this alone raised suspicion and placed plaintiff on notice that it should investigate further, in light of recorded documents indicating that the Property was substandard and a public nuisance.

9

The opinion of Bank employees that it would not take much to get the Property out of REAP is not an actionable misrepresentation of fact. (*Vega v. Jones, Day, Reavis & Pogue* (2004) 121 Cal.App.4th 282, 291. See also *Borba v. Thomas* (1977) 70 Cal.App.3d 144, 154 ["a private person is not entitled to rely on the opinion of another private person concerning the future decisions of a public body"].)

**4. Leave to Amend**

According to plaintiff, the trial court abused its discretion by denying leave to file a third amended complaint. Leave to amend is "open on appeal even though no request to amend such pleading was made," but there must be a reasonable possibility that an amendment would cure any defects. (Code Civ. Proc., § 472c, subd. (a); *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) The papers must spell out how an amendment can cure a defect or change the legal effect of the pleading. Leave to amend should not be granted if it would be an exercise in futility. (*Long v. Century Indemnity Co.* (2008) 163 Cal.App.4th 1460, 1467-1468.)

Plaintiff proposes to allege that it tried to investigate the condition of the Property before purchasing the note, but LAHD would not disclose the extent of the problems because plaintiff was not on title. Plaintiff had to rely on the Bank's representations, in the absence of information from LAHD. The Bank hid a February 2010 flood incident from plaintiff by performing superficial repairs.

Once plaintiff became the Property owner in April 2010, it could obtain information from LAHD and promptly hire contractors to ascertain the extent of the problems, including flood damage. Yet plaintiff chose to sit on its rights, waiting more than three years after taking title to file suit. A third amendment cannot avoid the essential problem plaintiff faces: it waited too long to sue the Bank for deceit.

## **DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

11