[Civ. No. 6784. Fourth Dist. Nov. 30, 1962.]

STUART N. LAKE, Plaintiff and Appellant, v. WYATT EARP ENTERPRISES, INC., Defendant and Respondent.

Jack L. Oatman and James B. Abbey for Plaintiff and Appellant.

Ervin, Cohen & Jessup, Leonard Cohen, Melvin S. Spears and Horace N. Freedman for Defendant and Respondent.

SHEPARD, J.—This is an appeal by plaintiff, hereinafter called Lake, from an order granting the motion of defendant Wyatt Earp Enterprises, Inc., hereinafter called Earp, for a change of venue.

FACTS

Lake's complaint, filed in the Superior Court of San Diego County, after setting forth Lake's residence, reputation as an author, Earp's corporate existence and production of a television series on "The Life and Legend of Wyatt Earp," and fictitiously named defendants, alleges that on June 28, 1954, Lake made a contract with Robert F. Sisk by which Lake leased or granted to Sisk certain rights to the use of Lake's proprietary material relating to Wyatt Earp; that a purported true copy of the contract is attached to the complaint; that all the rights of Sisk have been transferred to Earp and Earp has sublet some of the rights to others; that Earp now considers and maintains that the contract terminated June 28, 1959, except certain payments for reruns or showings of films produced prior to said termination date; that plaintiff contends that Earp has continued to use the material transferred to Earp under said contract, in spite of the fact that the material belongs to Lake, and Earp is unlawfully producing television performances covering Lake's material; that Lake contends that, as a result, the contract and contemporaneous construction thereof, resulting from

five years operation thereunder, creates on his behalf an implied contract by Earp to pay to plaintiff the reasonable value of the use of Lake's art, material, formats and his characterization and image of Wyatt Earp. A second count is set forth which repeats all of the allegations of the first cause and additionally asks for damages for Earp's failure to give public credit to Lake for authorship. No fictitiously named defendants are identified and they play no part here on the question of venue.

The contract attached to and made a part of the complaint provides in substance that Lake is engaged as a story and technical consultant and advisor in the production of a series of television and radio programs based on the life of Wyatt Earp; that Lake will make available to Sisk at no cost such research matter and other material as Lake may have available in connection with the life and times of Wyatt Earp. Then follow certain details on time of Lake's services concluding with the statement, "Your services shall continue until I cease the production of new programs of the series but in no event shall continue for more than five (5) consecutive years." Then follows a detailed schedule of remuneration to Lake and certain other details relating to contract performance. Section 8 of the contract provides in part:

"In addition to your services hereunder, I shall be entitled to and shall own and you hereby transfer and assign to me all rights of every kind and character whatsoever in and to all material written, prepared or suggested by you and in and to all research matter made available to me by you in accordance with paragraph 1 hereof and used by me hereunder, as well as in and to all other results and proceeds of your services hereunder, without any reservation or limitation. You also hereby grant me the right to use and display your name, voice and likeness for advertising purposes during the term of this employment, and perpetually in connection with the advertising and exploitation of the programs produced hereunder, and/or any series of which said programs are a part. . . ."

Section 9 also provides in part, "You agree that you shall not acquire any interest in and that I shall retain to myself complete ownership to all rights, titles, format, characters, and characterizations. . . ."

On April 27, 1961, Earp filed its demurrer, declaration of merits, declaration of principal place of business in Los

Angeles County, including alleged facts which, Earp claims, show that the written contract was entered into in Los Angeles County, facts supporting convenience of witnesses by trial in Los Angeles County and a purported true copy of a letter signed by Lake which, on its face, corroborates Earp's contention that ownership of all the material claimed by Lake actually rests in Earp except for book, magazine and newspaper rights. Concurrently Earp also filed its notice of motion for change of venue and points and authorities in support thereof and in support of the demurrer.

On May 3, 1961, Lake filed an affidavit in opposition to the motion of Earp for change of venue. Therein Lake refers to his own physical disability and consequent difficulty if the cause be tried in Los Angeles; that Lake was never required to render services outside of San Diego County; that all check payments on the contract were mailed to Lake in San Diego; facts from which Lake contends that convenience of witnesses indicates San Diego would be the proper place for trial. On June 6, 1961, Lake filed another affidavit in which he asserts that in the eight and one half months succeeding June 28, 1959, Earp requested and received from Lake certain services in connection with television programs for the 1960-1961 series; that Lake furnished such services in expectation of being paid, until Earp, on March 15, 1960, notified him it would not pay. The trial court granted the motion for change of venue and Lake appeals from that order.

## CONTRACT SUED ON

Lake's first contention is that the contract sued on was to be performed in San Diego County and that he is entitled to have the cause tried in that county, citing *Rutherford* v. *New York Hanseatic Corp.*, 153 Cal.App.2d 462 [134 P.2d 560], and *Estep* v. *Budger Mfg. Co.*, 164 Cal.App.2d 119 [330 P.2d 298]. However, it is quite clear from a reading of the complaint that the trial court was amply justified in believing that the complaint was not based nor intended to be based on the written contract of June 28, 1954, and that that contract, insofar as rendition of services by Lake was concerned, had, by its own terms, ceased and terminated on June 28, 1959. The trial court was justified in interpreting the complaint to be based on an implied duty of Earp to pay Lake the reasonable value of the use of certain materials belonging to Lake which Lake claims were used by Earp without Lake's consent. As was said in *Weitzenkorn* v.

*Lesser,* 40 Cal.2d 778, 794 [256 P.2d 947], "The existence of a contract implied in law under a *quantum valebant* count depends upon whether the defendant 'has used for its benefit any *property* of [plaintiff] . . . in such manner and under such circumstances that the law will impose a duty of compensation therefor.' "

As far as is disclosed by the complaint the material alleged to have been used by Earp was located in Los Angeles County and was there used by Earp. Lake makes no allegation that its use was in San Diego County.

### VENUE AS TO CORPORATIONS

Lake next contends that he has a constitutional right to trial in San Diego County. ▇▇▇ Venue as to corporations is determined by article XII, section 16, of the California Constitution. It reads: "A corporation or association may be sued in the county where the contract is made or is to be performed, or where the obligation or liability arises, or the breach occurs; or in the county where the principal place of business of such corporation is situated, subject to the power of the court to change the place of trial as in other cases."

▇▇ Thus, as is said in *Hale* v. *Bohannon,* 38 Cal.2d 458, 478 [25] [241 P.2d 4], "Where the plaintiff fails to bring his action in any of the counties specified by the Constitution, the corporation then is entitled to a change of venue to the county of its principal place of business under the last clause of the constitutional provision."

▇▇ In *Ellis* v. *National Casualty Co.,* 99 Cal.App.2d 77, 79 [221 P.2d 127], it is said, "Thus under the foregoing constitutional provision a plaintiff has a choice among forums enumerated therein. [Citations.] However the propriety of plaintiff's choice is to be determined from the pleadings of record at the time the motion for change of venue is filed. [Citations.] Necessarily therefore the plaintiff is required to frame his complaint to establish his right to retain the trial of the action in the county in which it is commenced. [Citation.]"

▇▇ With these principles in mind we find in the case at bar that Lake's complaint, construed as an action on an implied contract, laid the venue in no county except that of Earp's principal place of business.

The mere denomination of an action as for declaratory relief may not be used to bar the defendant from his right to change of venue to his county of residence. *(Shores* v. *Chip Steak Co.,* 130 Cal.App.2d 620, 624 [7] [279 P.2d 591].)

CONFLICT

By Lake's affidavit of June 6, 1961, he appears to suggest the existence of an implied contract for the reasonable value of services rendered at the special instance and request of Earp for which Earp impliedly agreed to pay. This, of course, presents a wholly different set of facts from that set forth in the complaint. All that results is a conflict. On appeal all conflicts of this character must be resolved in favor of the trial court's order and those facts set forth in the pleading which support the trial court's order must be accepted as true. *(Friedman Bag Co.* v. *Shrier,* 194 Cal. App.2d 561, 565 [7-8] [15 Cal.Rptr. 38]; *Miller* v. *Collins,* 8 Cal.App.2d 10, 12 [2] [47 P.2d 334].)

The order appealed from is affirmed.

Griffin, P. J., and Coughlin, J., concurred.