Filed 3/11/22; modified and certified for publication 4/5/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SWIFTAIR, LLC, | B303314 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC122964) |
| v. | |
| SOUTHWEST AIRLINES CO., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Nancy Newman and Elaine W. Mandel, Judges. Affirmed.

Holmgren Johnson: Mitchell Madden and Dennis M. Holmgren; Shamoun & Norman and Stephen R. Tittle, Jr. for Plaintiff and Appellant.

Baker & Hostetler and Teresa C. Chow; Hawxhurst Harris, David S. Harris, Gerald E. Hawxhurst, and Patrick B. Nichols; Douglas D. D'Arche for Defendant and Respondent.

# INTRODUCTION

SwiftAir, LLC and Southwest Airlines Co. agreed that SwiftAir would develop a software platform offering certain inflight deals to Southwest passengers and that Southwest would test the software to determine whether to license it. After Southwest ultimately decided not to license the software, SwiftAir filed this action against Southwest for breach of contract, fraud, and other causes of action. The trial court granted Southwest's motion for summary adjudication on SwiftAir's non-contract causes of action on the ground they were preempted by the federal Airline Deregulation Act (49 U.S.C. § 41713(b)(1)) (ADA). A jury then determined Southwest was not liable for breach of contract, finding SwiftAir failed to prove it was harmed by Southwest's failure to comply with the parties' agreement.

On appeal SwiftAir contends the trial court erred in granting Southwest's motion for summary adjudication because the ADA did not preempt any of its causes of action. SwiftAir also contends the court erred in denying motions for judgment notwithstanding the verdict and for a new trial in which SwiftAir argued the jury was required to award reliance damages on SwiftAir's breach of contract cause of action. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *SwiftAir Develops a Software Platform That Southwest Decides Not To License*

In 2010 SwiftAir was beginning to develop a software platform that would allow airplane passengers to purchase, while

in flight, coupons and vouchers the passengers could use at restaurants and other local merchants in their destination cities. Later that year Southwest expressed an interest in evaluating the software platform for use on its flights.

In August 2011 SwiftAir and Southwest entered into a "Beta Test Agreement" in which Southwest agreed to evaluate the software platform by testing it for eight weeks on some of Southwest's WiFi-enabled aircraft, to report to SwiftAir during the testing period on the software's performance, and to notify SwiftAir within 30 days after the testing period whether Southwest intended to use the software "on an extended basis." The agreement also provided that, in the event Southwest "elect[ed] to continue use" of the software platform, Southwest and SwiftAir would "enter into good faith discussions prior to the termination of the Initial Term [of testing] to negotiate a full license agreement." The parties later amended the Beta Test Agreement to extend the period of testing to 24 weeks, from September 15, 2011 through March 28, 2012. Installing the software platform on Southwest's planes also required SwiftAir to enter into an agreement with the company that operated Southwest's inflight WiFi service, Row 44, Inc.

At the end of the testing period, Southwest had not decided whether to license SwiftAir's software platform, but for a time Southwest continued "to work toward some arrangement whereby the SwiftAir product would be refined and deployed ultimately to Southwest planes." In the end, however, Southwest decided not to license SwiftAir's software platform.

B.    *SwiftAir Files This Action*

In August 2014 SwiftAir filed this action against Southwest and Row 44.[1]  In the operative first amended complaint SwiftAir asserted causes of action against Southwest for: (1) breach of contract and the covenant of good faith and fair dealing, (2) quantum meruit, (3) quantum valebant,[2] (4) restitution/unjust enrichment, (5) unfair competition, (6) misappropriation of trade secrets, (7) interference with prospective economic advantage, (8) breach of fiduciary duty, (9) fraudulent concealment, (10) promissory fraud, (11) intentional interference with contractual relations, and (12) conspiracy.

Southwest filed a motion for summary judgment or, in the alternative, summary adjudication, arguing, among other things, that "almost all of" SwiftAir's causes of action were preempted by the ADA.  The trial court agreed the ADA preempted all of SwiftAir's causes of action except for the first—for breach of contract (which included a claim for breach of the covenant of good faith and fair dealing)—and the court granted Southwest's

---

[1]    Row 44 is no longer a party to this appeal.

[2]    The "common count of quantum valebant [is] for the reasonable value of goods sold and delivered."  (*Weitzenkorn v. Lesser* (1953) 40 Cal.2d 778, 792; see *Lake v. Wyatt Earp Enterprises, Inc.* (1962) 210 Cal.App.2d 366, 370 ["'The existence of a contract implied in law under a quantum valebant count depends upon whether the defendant "has used for its benefit any *property* of [plaintiff] in such manner and under such circumstances that the law will impose a duty of compensation therefor."'"]; 4 Witkin, Cal. Procedure (2021 supp.) Pleading, § 573 ["The count on quantum valebant is similar to that on quantum meruit . . ., except that it seeks recovery of the reasonable value of goods sold."].)

motion for summary adjudication on all causes of action but that one.  On a motion by Southwest for reconsideration, the court granted summary adjudication on the portion of the first cause of action that alleged breach of the covenant of good faith and fair dealing.

The parties tried SwiftAir's remaining cause of action to a jury.  As relevant to this appeal, that cause of action rested on SwiftAir's allegation Southwest breached the Beta Test Agreement by not entering into good-faith discussions to negotiate a full licensing agreement and by not timely removing SwiftAir's software platform from Southwest's planes after the testing period.  The jury found that Southwest failed to comply with the Beta Test Agreement (in an unspecified manner), but that Southwest's failure to do so did not harm SwiftAir.  Consequently, the jury did not award SwiftAir any damages.

SwiftAir filed motions for judgment notwithstanding the verdict and for a new trial, contending the jury, having found Southwest breached the Beta Test Agreement, should have awarded SwiftAir "at least $878,000 in damages for the monies SwiftAir spen[t] developing" the software platform.  The trial court denied the motions.  SwiftAir timely appealed from the judgment.  (See Cal. Rules of Court, rule 8.108(b).)

## DISCUSSION

A. *The Trial Court Did Not Err in Granting Southwest's Motion for Summary Adjudication Based on ADA Preemption*

SwiftAir contends the trial court erred in granting Southwest's motion for summary adjudication on SwiftAir's non-

5

contract causes of action. SwiftAir argues that, in ruling the ADA preempted those causes of action, the court misinterpreted the ADA's preemption provision.

"We review a ruling on a motion for summary adjudication de novo [citations] and 'decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law.'" (*Doe v. Lawndale Elementary School Dist.* (2021) 72 Cal.App.5th 113, 124.) We also review questions of law, including statutory interpretation, de novo. (*Lozano v. City of Los Angeles* (2022) 73 Cal.App.5th 711, 723.)

### 1. *ADA Preemption*

In 1978 "Congress enacted the ADA, which sought to promote 'efficiency, innovation, and low prices' in the airline industry through 'maximum reliance on competitive market forces and on actual and potential competition.'" (*Northwest, Inc. v. Ginsberg* (2014) 572 U.S. 273, 280 (*Ginsberg*); see 49 U.S.C. § 40101(a)(6), (12)(A).) The ADA "included a pre-emption provision in order to 'ensure that the States would not undo federal deregulation with regulation of their own.' [Citation.] In its current form, this provision states that 'a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.'" (*Ginsberg*, at p. 280; see 49 U.S.C. § 41713(b)(1).)

Interpreting the ADA's preemption provision in *Morales v. Trans World Airlines, Inc.* (1992) 504 U.S. 374 [112 S.Ct. 2031,

6

119 L.Ed.2d 157] (*Morales*),[3] the United States Supreme Court held preemption applied to any state enforcement action "having a connection with, or reference to, airline 'rates, routes, or services.'" (*Id.* at p. 384; see *id.* at pp. 383, 391 [ADA precludes states from using their consumer protection laws to enforce guidelines on fare advertising]; see also *Ginsberg, supra*, 572 U.S. at p. 284 [under *Morales* a claim "relates to" an air carrier's prices, routes, or services "if it has 'a connection with, or reference to'" them].) The Supreme Court observed that the phrase "relating to" in the ADA preemption provision expressed "a broad pre-emptive purpose." (*Morales*, at p. 383.) The Supreme Court acknowledged, however, that some state actions, such as "state laws against gambling and prostitution as applied to airlines," "'may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have pre-emptive effect." (*Id.* at p. 390.)

The Supreme Court further interpreted the scope of ADA preemption in *American Airlines, Inc. v. Wolens* (1995) 513 U.S. 219 [115 S.Ct. 817, 130 L.Ed.2d 715] (*Wolens*). There, the plaintiffs alleged in an Illinois state court action that changes to

[3]     At the time of that decision, the ADA's preemption provision read, in relevant part: "'No State . . . shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier . . . .'" (*American Airlines, Inc. v. Wolens* (1995) 513 U.S. 219, 222-223 [115 S.Ct. 817, 130 L.Ed.2d 715]; see *Morales, supra*, 504 U.S. at pp. 378-379.) In 1994 Congress revised this provision to read, in relevant part: "[A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ." (*Wolens*, at p. 223, fn. 1.) "Congress intended the revision to make no substantive change." (*Ibid.*)

7

an airline's frequent flyer program violated state consumer protection laws and constituted breach of contract. (*Id.* at pp. 224-225.) The Illinois Supreme Court concluded that the ADA did not preempt the state laws because the frequent flyer program was "not 'essential,' [citation] but merely 'peripheral to the operation of an airline,'" and that therefore the plaintiffs' claims related to the airline's rates, routes, or services "only 'tangentially' or 'tenuously.'" (*Wolens*, at p. 226.) The United States Supreme Court, observing that *Morales*, *supra*, 504 U.S. 374 "does not countenance . . . separation of matters 'essential' from matters unessential to airline operations," reversed the Illinois Supreme Court's judgment as it related to the consumer protection law claims, holding the ADA preempted them. (*Wolens*, at p. 226.) But the Supreme Court in *Wolens* affirmed the judgment as it related to the breach of contract claims, which it held were not preempted. (*Ibid*.) The Supreme Court stated it did "not read the ADA's preemption clause . . . to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." (*Wolens*, at p. 228.)

In *Rowe v. New Hampshire Motor Transport Assn.* (2008) 552 U.S. 364 [128 S.Ct. 989, 169 L.Ed.2d 933] (*Rowe*) the United States Supreme Court applied its analysis of the ADA's preemption provision in *Morales* to interpret a similar preemption provision in the Federal Aviation Administration Authorization Act, concluding the latter provision preempted provisions of a Maine law regulating the delivery of tobacco to customers within the state. (See *Rowe*, at pp. 367-368, 370-371.) The Supreme Court in *Rowe* observed: "*Morales* said that federal law might not pre-empt state laws that affect fares in only a

8

'tenuous, remote, or peripheral . . . manner,' such as state laws forbidding gambling.  [Citation.]  But the Court did not say where, or how, 'it would be appropriate to draw the line,' for the state law before it did not 'present a borderline question.'" (*Rowe*, at p. 371.)

"Taken together, *Morales*, *Wolens*, and *Rowe* stand for the proposition that for a claim to be preempted by the ADA, "'two things must be true[:]  (1) the claim must derive from the enactment or enforcement of state law, and (2) the claim must relate to airline rates, routes, or services, either by expressly referring to them or by having a significant economic effect upon them.'"" (*Tanen v. Southwest Airlines Co.* (2010) 187 Cal.App.4th 1156, 1166-1167 (*Tanen*); see *All World Professional Travel Services, Inc. v. American Airlines, Inc.* (C.D.Cal. 2003) 282 F.Supp.2d 1161, 1168 (*All World*).)  More recently, in *Ginsberg*, *supra*, 572 U.S. 273 the United States Supreme Court held the ADA's preemption provision applies not "only to legislation enacted by a state legislature and regulations issued by a state administrative agency," but also to "state common-law rules." (*Ginsberg*, at p. 281; see *ibid.* ["state common-law rules fall comfortably within the language of the ADA pre-emption provision"].)  Specifically, the Supreme Court held the ADA preempted the plaintiff's state-law claim that, in terminating his membership in a frequent flyer program, the airline in question breached the implied covenant of good faith and fair dealing. (*Ginsberg*, at pp. 278, 289.)

## 2. *The ADA Preempted SwiftAir's Non-contract Causes of Action*

Southwest argues the ADA preempts SwiftAir's non-contract causes of action because those causes of action, in alleging SwiftAir developed its software platform for inflight use by Southwest's passengers, "expressly refer to" Southwest "services"—specifically, to Southwest's provision of "in-flight entertainment" and "in-flight wireless internet access" to its passengers. SwiftAir does not dispute that its non-contract causes of action expressly refer to Southwest's provision of inflight entertainment and wireless internet access,[4] but argues these are not "services" within the meaning of the ADA's preemption provision.

SwiftAir relies heavily on *Charas v. Trans World Airlines, Inc.* (9th Cir. 1998) 160 F.3d 1259 (*Charas*). There, the Ninth Circuit held that "Congress used the word 'service' in the phrase 'rates, routes, or service' in the ADA's preemption clause to refer to the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail." (*Charas*, at p. 1261.) According to the court in *Charas*: "In the context in which it was used in the Act, 'service' was not intended to include an airline's provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities." (*Ibid.*; see *id.* at pp. 1261-1262, 1266 [the ADA did not preempt "run-of-the-mill personal injury claims" relating to inflight provision of beverages, post-flight passenger assistance, and luggage handling].) SwiftAir argues that, under *Charas*, the inflight entertainment and wireless internet access Southwest

---

[4]    Nor does SwiftAir dispute that its non-contract causes of action derive from the enactment or enforcement of state law.

10

provided its passengers are "amenities," not "services" within the meaning of the ADA's preemption provision.

As SwiftAir grudgingly acknowledges in a footnote, however, the *Charas* court's interpretation of the term "service" in the ADA's preemption provision is the minority view among the federal circuits.  (See *Air Transport Assn. of America, Inc. v. Cuomo* (2d Cir. 2008) 520 F.3d 218, 223 (*Air Transport*) [collecting cases].)  Only the Third Circuit has followed *Charas*.  (*Ibid.*; see *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.* (3d Cir. 1998) 164 F.3d 186, 194.)  The Fifth Circuit in *Hodges v. Delta Airlines, Inc.* (5th Cir. 1995) 44 F.3d 334 (*Hodges*) articulated the majority view:  "'Services' generally represent a bargained-for or anticipated provision of labor from one party to another. . . . Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself.  These matters are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline.  It is these [contractual] features of air transportation that we believe Congress intended to de-regulate as 'services' and broadly to protect from state regulation." (*Id.* at p. 336.)  The First, Seventh, and Eleventh Circuits have joined the Fifth Circuit in adopting the *Hodges* definition of "services." (See *Bower v. Egyptair Airlines Co.* (1st Cir. 2013) 731 F.3d 85, 94-95 (*Bower*); *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia* (7th Cir. 1996) 73 F.3d 1423, 1433 (*Travel All Over the World*); *Koutsouradis v. Delta Air Lines, Inc.* (11th Cir. 2005) 427 F.3d 1339, 1343-1344.)

In addition, while not explicitly adopting the *Hodges* definition, the Fourth and Tenth Circuits have cited it in

11

determining that airline activities under consideration were "services" within the meaning of the ADA preemption provision. (See *Smith v. Comair, Inc.* (4th Cir. 1998) 134 F.3d 254, 259 ["boarding procedures" are a service]; *Arapahoe County Public Airport Authority v. F.A.A.* (10th Cir. 2001) 242 F.3d 1213, 1222 ["transportation itself" is a service].) Similarly, the Eighth Circuit has observed the *Hodges* definition is "[c]onsistent with" the Supreme Court's decision in *Wolens*, *supra*, 513 U.S. 219 and has "assume[d] for the sake of analysis" it is correct. (*Watson v. Air Methods Corp.* (8th Cir. 2017) 870 F.3d 812, 818.) And remarking that the Ninth Circuit's definition of "services" in *Charas* is "inconsistent with" aspects of the Supreme Court's decision in *Rowe, supra*, 552 U.S. 364, the Second Circuit has held that "[o]nboard amenities, regardless of whether they are luxuries or necessities, still relate to airline service and fall within the express terms of the preemption provision." (*Air Transport, supra*, 520 F.3d at p. 224; see *id.* at p. 222 [providing "food, water, electricity, and restrooms to passengers during lengthy ground delays" was a "service" within the meaning of the preemption provision]; see also *Bower, supra*, 731 F.3d at p. 94 [the Supreme Court's decision in *Rowe* "treated service more expansively" and "forecloses the *Charas* interpretation of 'service' as a term closely related to prices and routes"].)[5]

---

[5] Although several published California court of appeal decisions discuss this split of authority among the federal courts of appeals, the California decisions generally avoid taking a clear position on the issue. (See, e.g., *Tanen, supra*, 187 Cal.App.4th at pp. 1167-1169 ["What we find striking about the federal cases . . . is not their differences, but their similarities."]; *Rubin v. United Air Lines, Inc.* (2002) 96 Cal.App.4th 364, 377 ["[w]e need not

The overwhelming weight of authority and the analysis in those cases adopting the broader, *Hodges* definition of "services" (see, e.g., *Bower, supra*, 731 F.3d at p. 94; *Branche v. Airtran Airways, Inc.* (11th Cir. 2003) 342 F.3d 1248, 1257-1258 (*Branche*)) persuade us to apply that definition here. Among other considerations, the definition is more consistent with what the Supreme Court in *Morales* discerned to be the "broad preemptive purpose" of the ADA's preemption provision. (*Morales, supra*, 504 U.S. at p. 383; see *Branche*, at p. 1257 ["as the Supreme Court plainly explained in *Morales*, the ADA's preemption clause is properly afforded an extremely broad scope," and the "Ninth Circuit's reading of 'services,' we believe, tends to undermine this interpretive guideline"].) Moreover, "the *Charas* interpretation skirts the long-recognized canon of avoiding superfluousness" (*Bower*, at p. 94): If "service" in the phrase "price, route, or service" means "the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail" (*Charas, supra*, 160 F.3d at p. 1261), the word adds little to what is already covered by "price" and "route." (See *Bower*, at p. 94 ["By narrowly interpreting 'service' to relate to scheduling and 'service to' certain destinations, the *Charas* opinion does little to distinguish 'service' from 'route.'"].)

Providing inflight entertainment and wireless internet access to passengers falls well within the *Hodges* definition of an airline "service." (See *Lyn-Lea Travel Corp. v. American Airlines,*

---

decide which of the competing definitions of 'service' most accurately reflects Congress's intent"]; but see *id.* at p. 376 [stating the court in *Romano v. American Trans Air* (1996) 48 Cal.App.4th 1637 "essentially adopted the so-called majority view as expressed in the *Hodges* opinion"].)

*Inc.* (5th Cir. 2002) 283 F.3d 282, 289, fn. 11 ["'preemption extends to all of the economic factors that go into the provision of the quid pro quo for [a] passenger's fare, including . . . entertainment'"]; *David v. United Continental Holdings, Inc.* (D.N.J. Nov. 24, 2015, No. 2:15-cv-01926-SDW-LDW) 2015 WL 7573204, p. 3 [providing "in-flight DirectTV and Wi-Fi" is a "service"]; *Rosen v. Continental Airlines, Inc.* (N.J. Super. Ct. App. Div. 2013) 62 A.3d 321, 326 ["the provision of an airline entertainment headset falls squarely within" the *Hodges* definition of "service"].) SwiftAir does not suggest otherwise.

SwiftAir does suggest ADA preemption did not apply here for the additional reason that Southwest "did not and could not prove that SwiftAir's claims would have a significant economic effect on Southwest's services." But as cases cited by Southwest explain, the ADA preempts a cause of action if it relates to an airline's prices, routes, or services "''*either* by expressly referring to them *or* by having a significant economic effect upon them.'''" (*Tanen, supra,* 187 Cal.App.4th at pp. 1166-1167, italics added; accord, *All World, supra,* 282 F.Supp.2d at p. 1168.) After appearing to concede this point in its opening brief,[6] SwiftAir

---

[6] There, SwiftAir argued: "As the Product [i.e., SwiftAir's software platform] does not expressly refer to any of Southwest's services, for ADA preemption to apply, Southwest must prove that the Product has 'a significant economic effect upon them.'" Notably, this formulation mischaracterizes the requirements for ADA preemption. The issue is whether a given "claim"—not SwiftAir's software platform—relates to airline prices, routes, or services, by having a connection with or reference to them. (*Ginsberg, supra,* 572 U.S. at p. 280.) The "facts underlying the specific claim" determine whether it has that connection or

14

questions in its reply brief whether these cases correctly state the law.  They do.  (See, e.g., *S.C. Johnson & Son, Inc. v. Transport Corp. of America, Inc.* (7th Cir. 2012) 697 F.3d 544, 553; *Branche*, *supra*, 342 F.3d at p. 1259; *Parise v. Delta Airlines, Inc.* (11th Cir. 1998) 141 F.3d 1463, 1465; *Travel All Over the World*, *supra*, 73 F.3d at p. 1431 [observing that the Supreme Court in *Morales* "reasoned that, because the guidelines expressly referred to air fares, 'one cannot avoid the conclusion that . . . the guidelines "relate to" airline rates,'" then found "[a]lternatively" that "even if the guidelines were considered to refer to the advertising of fares, and not directly to fares, such restrictions on advertising would 'have the forbidden significant [economic] effect upon fares'"]; *Giannopoulos v. Iberia Líneas Aéreas de España, S.A.* (N.D.Ill. 2014) 17 F.Supp.3d 743, 751; *Banga v. Gundumolgula* (E.D.Cal. July 19, 2013, No. 2:13-cv-00667-MCE-CKD) 2013 WL 3804046, p. 2; *Chrissafis v. Continental Airlines, Inc.* (N.D.Ill. 1996) 940 F.Supp. 1292, 1297; *Leonard v. Northwest Airlines, Inc.* (Minn.Ct.App. 2000) 605 N.W.2d 425, 429-430 [the Supreme Court in *Morales* "reasoned that the advertising provisions related to fares within the meaning of the ADA not only because they expressly referred to them, but also because they reduced the incentive to price competitively"].)  SwiftAir, moreover, cites no authority to the contrary.  Because SwiftAir's non-contract causes of action expressly referred to Southwest services, the ADA preempted them without Southwest having to demonstrate a significant economic impact on those services.  The trial court

---

reference.  (*Smith v. Comair, Inc.*, *supra*, 134 F.3d at p. 259; see *Travel All Over the World*, *supra*, 73 F.3d at p. 1433; *Lopez v. Amazon Logistics, Inc.* (N.D.Tex. 2020) 458 F.Supp.3d 505, 513.)

did not err in granting Southwest's motion for summary adjudication.

B.   *The Trial Court Did Not Err in Denying SwiftAir's Motions for Judgment Notwithstanding the Verdict and for a New Trial*

SwiftAir also contends the trial court erred in denying its motions for judgment notwithstanding the verdict and for a new trial because the jury found Southwest breached the Beta Test Agreement, uncontroverted evidence established "SwiftAir expended $878,000 developing the Beta Test product," and therefore the jury was required to award SwiftAir $878,000 in "reliance damages" on its breach of contract cause of action.  The trial court did not err in denying the motions.

The parties agree the trial court correctly ruled Texas law governed the Beta Test Agreement.  To prevail on a breach of contract claim under Texas law, "a party must establish the following elements: (1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the defendant's breach."  (*Toth v. Sears Home Improvement Products, Inc.* (Tex.Ct.App. 2018) 557 S.W.3d 142, 157; see *Alliantgroup, L.P. v. Feingold* (S.D.Tex. 2011) 803 F.Supp.2d 610, 623.)  "The last element encompasses a causation requirement."  (*Toth*, at p. 157.)

Texas law does permit a plaintiff on a breach of contract action to recover "reliance damages," which "are similar to out-of-pocket damages" and have the purpose of restoring "the status quo at the time before the contract was made."  (*Geis v. Colina*

16

*Del Rio, LP* (Tex.Ct.App. 2011) 362 S.W.3d 100, 112; see *Jerry L. Starkey, TBDL, L.P. v. Graves* (Tex.Ct.App. 2014) 448 S.W.3d 88, 109, fn. 28 ["In a contract claim, out-of-pocket damages protect a reliance interest by restoring to the non-breaching party the expenditures made in reliance on the contract."].) Still, as the last element of the cause of action requires, "the breach must have caused those damages." (*Jerry L. Starkey*, at p. 109; see *id.* at pp. 109-110 [no evidence the defendant's breach caused the plaintiff to sustain out-of-pocket loss]; *Bechtel Corp. v. CITGO Products Pipeline Co.* (Tex.Ct.App. 2008) 271 S.W.3d 898, 926 [reliance damages protect a promisee's "interest in being reimbursed for loss caused by reliance on the promise"].) Here, the jury found SwiftAir did not meet its burden of proving Southwest's breach of the Beta Test Agreement caused SwiftAir's alleged damages.[7]

Ordinarily, we review the denial of a motion for judgment notwithstanding the verdict for substantial evidence (see *Brown v. City of Sacramento* (2019) 37 Cal.App.5th 587, 598 ["As in the trial court, the standard of review is whether any substantial evidence—contradicted or uncontradicted—supports the jury's conclusion."]) and the denial of a motion for new trial for abuse of discretion (see *Crouch v. Trinity Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995, 1018). But where, as here, "'the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's

---

[7] Asked in the special verdict form whether SwiftAir was "harmed by Southwest's failure to comply with the Beta Test Agreement," the jury answered "No."

evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466; see *Phipps v. Copeland Corp. LLC* (2021) 64 Cal.App.5th 319, 333 [where ""'the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals,'" generally "'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law"'"].)

SwiftAir does not address the issue of causation, let alone cite evidence compelling a finding in its favor on the issue as a matter of law. Therefore, it has failed to demonstrate that the jury was required to award it $878,000 in reliance damages or that the trial court erred in denying SwiftAir's posttrial motions grounded on that contention.

## DISPOSITION

The judgment is affirmed.  Southwest is to recover its costs on appeal.

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SWIFTAIR LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SOUTHWEST AIRLINES CO.,<br><br>    Defendant and Respondent. | B303314<br><br>(Los Angeles County<br>Super. Ct. No. SC122964)<br><br>**ORDER MODIFYING OPINION, AND CERTIFYING OPINION FOR PUBLICATION [NO CHANGE IN APPELLATE JUDGMENT]** |

THE COURT:

The opinion in this case filed March 11, 2022 is modified as follows:

On page 2, paragraph 2, the last sentence is deleted and replaced with: Agreeing with the vast majority of federal cases that have addressed the preemption issue, and with Texas law that (like California law) requires causation to recover reliance damages, we affirm.

The opinion in this case filed March 11, 2022 was not certified for publication. Because the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the respondent's request for publication under California Rules of Court, rule 8.1120(a), are granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

This order does not change the appellate judgment.

PERLUSS, P. J.              SEGAL, J.              FEUER, J.